** E-filed February 14, 2012 **

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WEST MARINE, INC.,<br><br>　　　　Plaintiff,<br>　　v.<br><br>WATERCRAFT SUPERSTORE, INC.,<br><br>　　　　Defendant.<br>_____/ | No. C11-04459 HRL<br><br>**ORDER (1) DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; (2) DENYING DEFENDANT'S ALTERNATIVE MOTION TO TRANSFER VENUE; AND (3) GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**<br><br>[Re: Docket Nos. 3, 15] |

　　　　Plaintiff West Marine, Inc. ("West Marine") brought this action against defendant Watercraft Superstore, Inc. ("Watercraft") in Santa Cruz County Superior Court for breach of oral agreement, breach of the covenant of good faith and fair dealing, intentional and negligent interference with economic advantage, declaratory and injunctive relief, unjust enrichment, quantum meruit, and promissory estoppel. Dkt. No. 1, Exh. 1 ("Complaint"). Both of the parties are purveyors of boating equipment; West Marine sells a broad array of "boating supplies and accessories," while Watercraft specializes in personal watercraft, or jet skis. Complaint ¶¶ 2-3. This action arises out of failed negotiations between the parties to execute an agreement to govern their shared use of a mark ("the mark" or "Blacktip mark") that both parties attempted to register with the U.S. Patent and Trademark Office ("USPTO"). Complaint ¶¶ 8-9, 13-14. Watercraft timely removed the action to this court on the basis of diversity jurisdiction. Dkt. No. 1 ("Notice of Removal"). Both of the parties have consented to the undersigned's jurisdiction.

Watercraft now moves to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue to the Middle District of Florida. Dkt. No. 3 ("Motion to Dismiss"). West Marine has opposed the motions. Dkt. No. 14. Watercraft has replied. Dkt. No. 17. The court deemed the motions suitable for determination without oral argument and vacated the February 14, 2012 hearing. Dkt. No. 34. Upon consideration of the moving papers and applicable authority, the court DENIES defendant's motion to dismiss and its alternative motion to transfer this case to the Middle District of Florida. The court GRANTS plaintiff's request for judicial notice.

### I. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

LEGAL STANDARD

A defendant may move, prior to trial, to dismiss an action for lack of personal jurisdiction. Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977); Fed. R. Civ. P. 12(b)(2). The defendant must object to the court's exercise of personal jurisdiction in the first Rule 12 motion or in the responsive pleading or be deemed to have waived the issue. Fed. R. Civ. P. 12(h)(1). The party seeking to invoke jurisdiction of the federal court has the burden of establishing that such jurisdiction exists. Id. at 1285. At this stage of the litigation, the plaintiff need only "make, through [his] pleadings and affidavits, a prima facie showing of the jurisdictional facts." Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir. 2001). In ruling on a Rule 12(b)(2) motion, the court should view the pleadings in a light most favorable to plaintiff and all doubts are to be resolved in his favor. Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 n. 1 (9th Cir. 1995).

When there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court is located is applicable. California's long-arm statute, Cal. Code Civ. P. § 410.10, permits the exercise of jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Aanestad v. Beech Aircraft Corp., 521 F.2d 1298, 1300 (9th Cir. 1974). Due process requires that a court only exercise jurisdiction over a nonresident defendant if that defendant has "minimum contacts" with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). Each defendant's contacts with the forum state are evaluated individually. Calder v. Jones, 465 U.S. 783, 790 (1984).

There are two types of personal jurisdiction: general and limited (or specific) jurisdiction. Historically, a court's ability to render judgment *in personam* was grounded in its power over the defendant's person, making the defendant's physical presence in the forum state prerequisite to a binding judgment. Pennoyer v. Neff, 95 U.S. 714, 733 (1878). But, if a nonresident defendant's activities within the state are "substantial" or "continuous and systematic," there is a sufficient relationship between the defendant and the forum state to support general personal jurisdiction, even though the claim is unrelated to the defendant's forum activities. Data Disc, 557 F.2d at 1287. But, if a nonresident defendant's activities in the forum state are not "substantial" or "continuous," a court may only exercise limited personal jurisdiction, and only if there is a sufficient relationship between the defendant's contacts with the forum state and the claim at issue. Id.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A district court has discretion to decide motions to transfer venue based upon a case-by-case consideration of convenience and fairness. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

DISCUSSION

Although the plaintiff devotes much of its attention to arguing for specific personal jurisdiction, the court believes the better argument is for general personal jurisdiction, as discussed below. When general jurisdiction is found, there is no need to consider whether specific personal jurisdiction could also exist. Data Disc, 557 F.2d at 1287 (explaining that courts consider specific jurisdiction only when a nonresident's activities in the forum state are insufficient to give rise to general jurisdiction).

West Marine shows the following contacts between Watercraft and the state of California as proof that personal jurisdiction exists: (1) Watercraft operates two interactive websites accessible to Californians, one for purchasing Watercraft products ("the store website"), and one where users can access discussion boards, classified ads, listings for products available on the store website, news, and other content relating to personal watercraft use (the "forum website"); (2) Watercraft, through the forum website, establishes and promotes "riding groups" for jet ski users in specific geographic

regions, including two such groups in California; (3) Watercraft mails print catalogs to past customers and to "'mailing lists [Watercraft] ha[s] purchased,'" including to California residents; (4) Watercraft's sales to California consumers, which from 2009 through September 30, 2011 were approximately $230,000, or 7.4% of its total sales in the three years it has been in business; (5) Watercraft's purchases of products from 13 California suppliers, which from 2009 through 2011 totaled $1.96 million; (6) Watercraft's sales of products though Ebay, a California company; (7) Watercraft's contracts for the marketing of its products with YouTube, Facebook, and Google, all California companies; and (8) Watercraft's use of Paypal, a California company, as its online payment processor. Dkt. No. 14, pp. 4-7 ("Opposition"). Since the claims at issue in this action do not arise out of any of these contacts, they support general, rather than specific, personal jurisdiction.

Watercraft argues that these contacts are misleading and insubstantial. It contends that any California customer who purchased products from its website or by calling its telephone number "reache[ed] into Florida" to do so. Motion to Dismiss at 4. It also argues that the forum website is actually owned by a separate company called SBT, which permits Watercraft to advertise on the site in exchange for paying all hosting fees and moderating the website, and which created the "riding groups" in 2006, before Watercraft came into existence (although Greg Pickren owns both Watercraft and SBT). Reply, p. 5; Dkt. No. 18, p. 2 ("Supp. Pickren Dec."); Dkt. No. 14, Exh. 2 ("Chang Dec.") at Exh. A, p. 14:23 ("Pickren Deposition"). Next, Watercraft argues that because West Marine is a much larger company than it is, this court should discount the amount of sales it has done in California because that amount is far less than what West Marine sold during the same period. Reply at 4. Finally, Watercraft argues that the fact that it has entered into contracts with other California companies and agreed to venue in California is irrelevant to this inquiry and threatens to expand this district's exercise of personal jurisdiction over all users of those companies. Reply at 5-6. These arguments tend to address specific rather than general jurisdiction, and, as discussed below, may be inapposite to an analysis of general jurisdiction.

A. <u>General Personal Jurisdiction</u>

4

General personal jurisdiction may be exercised as to any cause of action, if the defendant is domiciled in the forum state or if its activities there are "substantial" or "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199 (9th Cir. 2006) (en banc). The assertion of general jurisdiction must always be reasonable. Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 852-53 (9th Cir. 1993). The Ninth Circuit has set a high standard for general jurisdiction. See Yahoo! Inc., 433 F.3d at 1205.

As a preliminary matter, the court acknowledges that none of Watercraft's contacts with California, standing alone, would be adequate to confer general jurisdiction over Watercraft. But, the court considers these contacts in the aggregate and finds that, while it is a close call, general jurisdiction is warranted.

   *1. Watercraft's interactive websites*

"The degree of interactiveness of a defendant's website is a factor that informs the jurisdictional analysis." Coremetrics, Inc. v. AtomicPark, LLC, 370 F. Supp. 2d 1013, 1021 (N.D. Cal. 2005). The federal courts have adopted a sliding scale test that considers a website's level of interactivity "directly proportionate" to the likelihood that personal jurisdiction can be constitutionally exercised. Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). While "[t]he 'mere accessibility of the defendants' websites'" is insufficient to establish jurisdiction, a website that allows customers to "engage in electronic transactions" with the defendant may well prove sufficient. Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 512 (D.C. Cir. 2002) (quoting GTE New Media Servs. Inc. v. Bell South Corp., 339 U.S. App. D.C. 332, 199 F.3d 1343, 1350 (D.C. Cir. 2000)). The Gorman court noted in particular that a defendant whose website permits customers to conduct transactions in the same way that they could over the phone or in person makes the defendant even more "susceptible to application of the 'doing

1  business' test" than traditional non-resident defendant companies. <u>Gorman</u>, 293 F.3d at 513. But,
2  without evidence of actual sales, even the most highly interactive website will not, alone, suffice to
3  establish general jurisdiction. <u>Coremetrics</u>, 370 F. Supp. 2d at 1019-20.

4  On Watercraft's store website, customers can browse available products and place orders
5  online. Online purchases require customers to input personal information such as their names, email
6  addresses, payment information, and billing/shipping information. Customers can also subscribe to
7  Watercraft's mailing list and establish accounts through the website. Like the defendant company in
8  <u>Coremetrics</u>, where the court found that general personal jurisdiction existed, Watercraft operates a
9  virtual store that acts just like a brick and mortar store and is "largely designed so as to approximate
10 physical presence in a forum." <u>Coremetrics</u>, 370 F. Supp. 2d at 1021. As measured by the <u>Zippo</u>
11 test, Watercraft's store website clearly falls on the "highly interactive" end of the spectrum, where
12 the entity clearly does business over the Internet.

13 *2. Watercraft's sales in California*

14 When an analysis of defendant's online presence in the forum state is at issue, the existence
15 and extent of actual sales in the state are relevant. <u>See</u> <u>Coremetrics, Inc.</u>, 370 F. Supp. 2d at 1022
16 (finding general jurisdiction where defendant made "substantial" sales into forum state through
17 interactive website, along with online advertising, purchases from forum state, and contracts with
18 third parties in forum state); <u>Estate of Stephen Bank v. Swiss Valley Farms, Co.</u>, 286 F. Supp. 2d
19 514, 518 (D. Md. 2003) ("Without evidence of *actual sales* made to Maryland residents . . . a
20 website that merely offers the possibility of transacting . . . is insufficient for jurisdictional
21 purposes"). Indeed, "the most reliable indicator of the nature and extent of defendant's Internet
22 contact with the forum state will be the amount of sales generated in the state by or through the
23 interactive website." <u>Coastal Video Communications Corp. v. Staywell Corp.</u>, 59 F. Supp. 2d 562,
24 572 (E.D. Va. 1999).

25 According to the deposition of Watercraft owner Greg Pickren, sales to California customers
26 represent between 6% and 7.4% of Watercraft's total sales over the three year period that it has been
27 operational. Pickren Deposition at 42:23-44:8. Watercraft states in its moving papers that California
28 sales constitute 7.4% of total sales. <u>See</u> Reply at 4. Pickren also testified that Watercraft has made

6

$4 million in total sales over its three years of operations, which would suggest that the California sales amounted to approximately $300,000. Pickren Deposition at 42:11-12. While this percentage does not represent a majority of Watercraft's sales, the court notes that it is much higher than sales percentages in other cases where general jurisdiction was not found. See, e.g., Hockerson-Halberstadt, Inc. v. Propet USA, Inc., 62 Fed. Appx. 322, 337 (Fed. Cir. 2003) (concluding that there was no general jurisdiction over defendant who made only 0.00008 percent of its sales to forum state); Injen Tech. Co. Ltd. v. Advanced Engine Mgmt., 270 F. Supp. 2d 1189, 1194 (S.D. Cal. 2003) (noting that sales by defendant to forum state, which "account[ed] for only 2% of its total business, are not the kind of systematic and continuous' contacts that would warrant the exercise of general jurisdiction"); Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd., 64 F. Supp. 2d 448, 452 (E.D. Penn. 1999) ("it is impossible for the court to find that the small percentage of sales [i.e., less than 1 percent] constitute continuous and systematic business within the forum state"); StairMaster Sports/Med. Prods., Inc. v. Pac. Fitness Corp., 916 F. Supp. 1049, 1053 (W.D. Wash. 1996) (finding insufficient contacts to justify general jurisdiction where only 3 percent of defendant's sales were made to forum state), aff'd, 78 F.3d 602 (Fed. Cir. 1996); Tosco Corp. v. Sun Co., Inc., No. C94-4190 FMS, 1995 U.S. Dist. LEXIS 4643, at *7-8 (N.D. Cal. Apr. 5, 1995) (finding no general jurisdiction where contacts with forum state included, inter alia, only 0.0006 percent of total revenues for one year). Cf. Coremetrics, 370 F. Supp. 2d 1013, 1022 (finding general jurisdiction where contacts with forum state included 14.71 percent of total sales).

In addition, Watercraft's sales to California consumers are central to its business as an online retailer, which weighs in favor of general jurisdiction. See Coremetrics, 370 F. Supp. 2d at 1023 (noting that sales are central to online retail business and therefore weigh in favor of finding general jurisdiction); Provident Nat'l Bank v. California Fed. Savings & Loan Ass'n, 819 F.2d 434, 438 (3d Cir. 1987) (distinguishing Helicopteros' holding of no general jurisdiction on the ground that defendant's contacts with forum state were not central to its business).

As previously noted, Watercraft argues that the amount of sales it has done in California is negligible when compared to West Marine's much larger sales volume. See Reply at 4. However, Watercraft has not provided any authority, and the court is not aware of any, that makes the parties'

7

relative sales revenue relevant to the question of whether personal jurisdiction over Watercraft exists. Rather, the Ninth Circuit has said only that "sales" are one "factor[] to be taken into consideration" when evaluating personal jurisdiction. See Bancroft, 223 F.3d at 1086. Under the logic of Watercraft's argument, any defendant sued by a company larger than itself could argue that, *by comparison*, its presence in the forum state is negligible, and thereby defeat personal jurisdiction. This court knows of no authority or policy justification for such a comparative analysis. Rather, it is Watercraft's contacts with California that are at issue, irrespective of whether those contacts dwarf or are dwarfed by the contacts that plaintiff has with the forum state.

*3. Watercraft's internet advertising contracts with third parties with offices in California*

The Ninth Circuit has held that doing business *in* California is not the same as doing business *with* California—and merely doing business with companies in California, without having any other contacts, will not give rise to general jurisdiction. See Bancroft & Masters v. Augusta Nat'L, 223 F.3d 1082, 1086 (9th Cir. 2000) (finding that a defendant company that was not registered or licensed to do business in California, paid no taxes in California, held no bank accounts there, had a passive website, and did not advertise there at all, but maintained contracts with several California companies was not subject to general jurisdiction).

Additionally, agreeing to personal jurisdiction in California in advertising contracts with third parties is not sufficient on its own to establish general jurisdiction. But the Supreme Court has said that there is no authority to "suggest[] that a choice-of-law provision should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (U.S. 1985). In Burger King, the Court found that a non-resident defendant who executed a contract that contained a choice of law provision and provided for oversight from a company in the forum state over a 20-year period had established sufficient contacts for general personal jurisdiction. In this case, Watercraft did enter into contracts with several California companies that contained choice of law provisions designating California as the forum state, but it did not enter into any such contract with West Marine.

8

Certainly, the fact that Watercraft agreed to submit to California jurisdiction in contracts with entities not party to this action cannot alone suffice to establish general personal jurisdiction. However, it does go to the reasonableness of Watercraft's expectation that it might be haled into a California court. See Coremetrics, 370 F. Supp. 2d at 1024.

*4. Watercraft's online and mail advertising*

Watercraft sends mail catalogs to past customers as well as to mailing lists it has purchased, and it advertises through the websites of Google, Facebook, and Youtube, the companies with whom it has entered into advertising contracts. Watercraft argues that it generates "one-size-fits-all" advertisements, and never "targets" California consumers. Reply at 4. However, neither does it seek to exclude California consumers from its advertising efforts. See Coremetrics at 1021-22 ("At the very least, although [defendant] may not have targeted California consumers specifically, it has *reached out across the nation* to promote its services" (emphasis added)). Watercraft's argument that its advertisements reach California consumers only because they "happen to be located there" borders on the disingenuous. All consumers "happen to be located" wherever they live, and it is unrealistic for an entity that advertises both online and through postal mail to imagine that it establishes no contacts with states where its customers "happen to be located." If Watercraft's argument is taken to its logical end, a defendant could inundate states with non-state-specific advertisements and yet argue that it had not created any contacts with the states by doing so. If Watercraft's advertisements invite orders from California residents (and from everyone else), it cannot claim that it never directed advertising toward California. See Ty, Inc. v. Baby Me Inc. 2001 U.S. Dist. LEXIS 5761, 23 (N. D. Ill. Apr. 25, 2011).

*5. Watercraft's purchases from California suppliers*

In Helicopteros, the Supreme Court concluded that "mere purchases," even if such purchases occurred at regular intervals, were not themselves sufficient to establish general personal jurisdiction. Helicopteros, 466 U.S. 408, 418. However, in Helicopteros, defendant's purchases in the forum state, Texas, were not related to its central business, helicopter services for South American oil and construction industries, which weighed against a finding of general jurisdiction

9

despite the fact that it made a majority of its purchases in the forum state. See Provident National Bank, 829 F.2d at 438.

Watercraft appears to obtain a substantial portion of its inventory from California suppliers. In his deposition, Pickren testified that California suppliers make up "in the range of about 30 percent" of all of Watercraft's purchases. Pickren Deposition 39:16-17. West Marine alleges, and Pickren confirmed in his deposition, that Watercraft's purchases from these 13 California suppliers cost $1.96 million in total. Opposition at 7; Pickren Deposition at 30:9-25. Like sales in a forum state, purchases are indicative of Watercraft's business activities in the forum state. It is apparent that, even if Watercraft does a minority of its sales in California, it obtains a significant portion of its inventory from companies located there. Although Watercraft purchases less of its inventory from California that the defendants in Helicopteros did from Texas, its purchases are directly related to its business—selling those same items to consumers.

In summary, although none of these elements alone could confer general jurisdiction over Watercraft, when taken in their entirety, they establish a "substantial and continuous" link between Watercraft and the state of California. Multiple aspects of Watercraft's business, from purchasing inventory to advertising to sales, bring it into contact with California consumers and businesses. This court concludes that, based on the totality of Watercraft's contacts with California, they are sufficiently substantial, continuous, and systematic to support a finding of general jurisdiction.

*6. Reasonableness of Personal Jurisdiction*

Even after the court concludes that there are sufficient contacts to support general jurisdiction, it must still consider the reasonableness of asserting jurisdiction. The test for reasonableness is the same whether the court is considering general or specific personal jurisdiction: (1) the extent of purposeful interjection, (2) the burden on the defendant to defend the suit in the chosen forum, (3) the extent of conflict with the sovereignty of the defendant's state, (4) the forum state's interest in the dispute, (5) the most efficient forum for judicial resolution of the dispute, (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 (9th Cir. 1993).

Here, Watercraft has failed to make a compelling case that jurisdiction would be unreasonable. It has interjected itself into California's affairs through the volume and frequency of its sales, purchases, contracts, and advertising in the state. And, given the amount of purchases and sales Watercraft does with California consumers and businesses, California does have an interest in this litigation. Watercraft argues that since all of its thirteen employees are located in Florida, it would be unduly burdensome to make it defend suit here. However, the court has not been presented with evidence that all or even most of Watercraft's employees would be called as witnesses or required to attend court proceedings here. Of course, West Marine will also have to call witnesses from its staff, who are located in California, so if anything, this factor is a wash. In addition, Watercraft's counsel is located in San Jose, and the parties have already evidenced a willingness to conduct discovery in Florida when convenient (for instance, by deposing Pickren there), which lessens Watercraft's burden. Florida does offer an alternate forum for this action, but alone, the presence of an alternate forum does not overcome reasonableness established by the other factors. See Colt Studio, Inc. v. Badpuppy Enterprise, 75 F. Supp. 2d 1104, 1111 (C. D. Cal. 1999).

Accordingly, for the foregoing reasons, the court DENIES Watercraft's motion to dismiss and finds that general personal jurisdiction exists.

## II.   MOTION TO TRANSFER TO THE MIDDLE DISTRICT OF FLORIDA

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The moving party bears the burden of showing that transfer is appropriate by illustrating a "strong showing of inconvenience." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). A district court nonetheless retains discretion to decide motions to transfer venue based upon a case-by- case consideration of convenience and fairness. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). Transfer is appropriate only where (1) the transferee court is one where the action might have been brought; and (2) the convenience of the parties and witnesses and the interest of justice favor transfer. See 28 U.S.C. § 1404(a); see also Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).

There is no dispute that the instant action properly could have been filed in the Middle District of Florida, where Watercraft is located. Accordingly, the decision to transfer depends upon the convenience of the parties and witnesses and the interests of justice. In exercising its discretion, the court must consider public factors, which pertain to the interests of justice, and private factors, which concern the convenience of the parties and witnesses. Decker Coal Co., 805 F.2d at 843. Among the factors to be considered are: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's claims for relief in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. Jones, 211 F.3d at 498-99.

In this case, the factors tilt toward maintaining suit in this district. First, it is difficult to identify a single "location" where the relevant contract was negotiated. Watercraft attempts to argue that West Marine "reached into" Florida to initiate the contract negotiations, while West Marine contends that all of its employees who participated in the negotiations are located in California. See Motion to Dismiss at 8-9; Opposition at 18. In addition, Watercraft argues that the proposed contract would have chosen Florida as the litigation venue. Motion to Dismiss at 9. However, since the contract negotiation took place entirely or nearly entirely through phone calls and emails, the court concludes that both California and Florida can be considered "locations" where the contract was negotiated. This factor is neutral as between Florida and California, which weighs against transfer away from the current venue.

The costs of litigation are speculative at this point, but are likely to be similar in either forum. Watercraft argues that since all of its employees are in Florida, and because it is a smaller company than West Marine, litigation in California will be unduly expensive. It contends that it would be very costly to "set up a base of operations" in California. However, Watercraft has retained counsel located in this district, so most court appearances will require no travel by Watercraft employees. Moreover, there is no evidence that all or most of those employees will ever be required to travel to California in connection with this action. Watercraft's ability to

12

communicate with counsel via telephone, email, video conferencing, etc. will likely eliminate the need to set up a physical "base" of any kind here. The parties have shown a willingness to conduct some discovery in Florida, which lessens the burden on Watercraft. Finally, West Marine has stated that its employees who participated in the contract negotiations are located in California, as is its counsel. Opposition at 18. Thus, if the case is transferred, all of the costs Watercraft has noted will be shifted to West Marine. It is true that Watercraft will have to incur some additional expense to litigate in California, but it has not shown that this expense would be unduly burdensome or create a severe hardship. As the parties and their respective witnesses are located in different states, some expense will be required no matter where this case is located, but the overall cost of litigation does not appear to differ significantly between the two forums.

Next, West Marine has alleged causes of action under California law. While the federal courts may be required to apply the laws of various states, it stands to reason that federal courts located in California are likely to be more familiar with California law than federal courts located in other states. In addition, West Marine has chosen California as its forum. As discussed in detail in this order, Watercraft has a variety of contacts with California sufficient to establish general jurisdiction in this court, and West Marine is headquartered in this district. West Marine has more contacts in California than Watercraft, and Watercraft has more contacts in Florida than West Marine, but both parties have substantial contacts in this district. These factors weigh in favor of maintaining the action in this district.

As this case is in its early stages, and fact discovery has not begun, the availability of compulsory process to compel attendance of non-party witnesses is unknown and may not be relevant in this case. No party has identified a non-party witness, so this factor is neutral. Ease of access to sources of proof will likely be similar in either forum. Both parties argue that relevant witnesses are located in their preferred districts, and most non-witness evidence, such as emails and proof of the contract negotiations, can be easily obtained irrespective of where this action is located, so this factor is also neutral. Finally, Watercraft's contacts with the forum state do not relate to plaintiff's claims for relief, which does weigh in favor of transfer.

On balance, the majority of the Jones factors weigh in favor of keeping this lawsuit in this district, and only one of the factors truly weighs in favor of transfer. Watercraft has not satisfied its burden of showing that transfer is appropriate in this case. Accordingly, the alternative motion to transfer venue is DENIED.

**III.     REQUEST FOR JUDICIAL NOTICE**

West Marine requests that the court take judicial notice of Watercraft's store website, www.watercraftsuperstore.net.

Courts may take judicial notice of a fact not in the record only where the fact is 'either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' Fed. R. Evid. 201(b). Facts capable of 'ready determination' must be 'widely available.' 21 Charles Alan Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5106, at 500 (1977). Courts have taken notice of defendants' websites or characteristics thereof when determining personal jurisdiction. See Coremetrics, 370 F. Supp. 2d at 1021; Enter. Rent-A-Car Co. v. U-Haul Int'l, 327 F. Supp. 2d 1032, 1042 n. 4 (E.D. Mo. 2004); Publications Int'l v. Burke/Triolo, Inc., 121 F. Supp. 2d 1178 n. 2 (N.D. Ill. 2000).

Accordingly, good cause appearing, the court takes judicial notice of the website.

CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Watercraft's motion to dismiss for lack of personal jurisdiction is DENIED;
2. Watercraft's motion to transfer venue is DENIED; and
3. West Marine's request for judicial notice is GRANTED.

Dated: February 14, 2012

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

14

**C11-04459 Notice will be electronically mailed to:**

| | |
|---|---|
| Ian Ballon | ballon@gtlaw.com |
| Lisa C. McCurdy | mccurdyl@gtlaw.com |
| Benjamin Ross Lemke | blemke@mount.com |
| David Harlan Fingerman | dfingerman@mount.com |
| Kathryn G. Spelman | kspelman@mount.com |
| Lori Chang | changl@gtlaw.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**